RECORD HEAD INC., a North Dakota Corporation, Dan Bredell, d/b/a Mother's Records and Nalpac Enterprises, Ltd., d/b/a Nalpac, Ltd., a Michigan Corporation, Plaintiffs,

v.

Allen OLSON, Individually and in his official capacity as Attorney General of the State of North Dakota, Defendant.

Civ. No. A3–79–79.

United States District Court,
D. North Dakota,
Southeastern Division.

Sept. 17, 1979.

Russell J. Myhre, Bismarck, N.D. (Michael L. Pritzker, Stroup, Goldstein, Jacobs, Jenkins & Pritzker, Chicago, Ill., of counsel), for plaintiffs.

Gail H. Hagerty, Asst. Atty. Gen., Allen I. Olson, Atty. Gen., Bismarck, N.D., for defendant.

## ORDER

BENSON, Chief Judge.

Plaintiffs in the above-entitled action seek declaratory, injunctive and monetary relief from the effects of N.D.Cent.Code § 12.1–31–04, a statute enacted by the North Dakota Legislature in 1979 and which became effective on July 1, 1979. The action is now before the court on plaintiffs' motions for a preliminary injunction and to strike affirmative defenses pleaded by defendant.

N.D.Cent.Code § 12.1–31–04 provides as follows:

1. Any person who knowingly manufactures, sells, or delivers paraphernalia to another or who possesses with intent to manufacture, sell, or deliver paraphernalia to another shall be guilty of a class A misdemeanor.

2. As used in this section:

 a. "Deliver" means the actual, constructive, or attempted transfer from one person to another of paraphernalia whether or not there is an agency relationship.

 b. "Intent" means when a person engages in the conduct, it is that person's purpose to do so.

 c. "Knowingly" means when a person engages in the conduct, the person knows or has a firm belief, unaccompanied by substantial doubt, that the person is doing so, whether or not it is the person's purpose to do so.

 d. "Manufacture" means the production, preparation, construction, or processing of paraphernalia, and includes any packaging or repackaging

of the paraphernalia, or the labeling or relabeling of it or its container.

e. "Paraphernalia" means any instrument, device, article, or contrivance used, designed for use, or intended for use in ingesting, smoking, administering, or preparing marijuana, hashish, hashish oil, or cocaine. "Paraphernalia" excludes cigarette papers and tobacco pipes but includes, and is not limited to:

(1) Metal, wooden, acrylic, glass, stone, plastic, or ceramic marijuana or hashish pipes with or without screens, permanent screens, hashish heads, or puncture metal bowls.

(2) Water pipes designed for use or intended for use with marijuana, hashish, hashish oil, or cocaine.

(3) Carburetion tubes or devices.

(4) Smoking and carburetion masks.

(5) Roach clips.

(6) Separation gins designed for use or intended for use in cleaning marijuana.

(7) Cocaine spoons and vials.

(8) Chamber pipes.

(9) Carburetor pipes.

(10) Electric pipes.

(11) Air-driven pipes.

(12) Chilams.

(13) Bongs.

(14) Ice pipes or chillers.

3. In determining whether an instrument, device, article, or contrivance is paraphernalia used, designed for use, or intended for use in ingesting, smoking, administering, or preparing marijuana, hashish, hashish oil, or cocaine, a court shall consider the following:

a. Whether a person or business establishment charged with violating this Act is a licensed distributor or dealer of tobacco products under chapter 57–36.

b. Expert testimony as to the principal use of the instruments, devices, articles, or contrivances claimed to be paraphernalia.

c. Circumstantial evidence concerning the total business of a person or business establishment and the type of instruments, devices, articles, contrivances or items involved in the business.

d. National and local advertising concerning the use of the instruments, devices, articles, or contrivances claimed to be paraphernalia.

Plaintiffs acknowledge in their complaint that they have sold items which may possibly fall within the statutory definition of "paraphernalia" in N.D.Cent.Code § 12.1–31–04. Plaintiffs further state that they wish to comply with § 12.1–31–04 but are unable to do so because the statute is so broad and argue that persons of common understanding and intelligence cannot ascertain what items are within the ambit of the statute. It is alleged that the statute is void for vagueness, and therefore violative of the Fourteenth Amendment to the Constitution. Plaintiffs also allege that the statute is violative of the First, Eighth and Ninth Amendments to the Constitution and the Commerce Clause.

A hearing before the court was had on the motion for a preliminary injunction. At the hearing both oral testimony and physical exhibits were received into evidence.

## I. *Abstention*

Defendant contends this court should abstain from ruling on the issues in this case until the North Dakota courts have construed § 12.1–31–04. In support of this contention, defendant asserts that the North Dakota courts may construe the statute to require, as an element, intent by the vendor to engage in unlawful activity, and that such a construction would either avoid plaintiffs' constitutional challenge or at least significantly alter the nature of the problem presented to the court.

▮ This court has jurisdiction to hear plaintiffs' claims. 28 U.S.C. § 1331. Abstention from the exercise of federal jurisdiction is the exception, not the rule. A federal court may abdicate its responsibility

to decide cases properly before it only under exceptional circumstances, where the order to the parties to repair to the state court would clearly serve an important countervailing interest. *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). *See also Colorado River Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404, 5 L.Ed. 257 (1821).

The Supreme Court has confined the circumstances under which abstention would be appropriate to three general categories: (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959); (2) where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar; and (3) where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution, or proceedings for the collection of state taxes. *Colorado River Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

Defendant concedes that this case does not fall into the third category of cases enunciated by *Colorado River Conservation District, supra.* There does not appear to be any state proceeding, criminal or civil, pending against plaintiffs.

Defendant contends that this case fits within either of the first two categories where abstention is appropriate. The first category is essentially the doctrine of abstention as enunciated in *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention under the *Pullman* doctrine is appropriate "where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Bellotti v. Baird*, 428 U.S. 132, 146–47, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976), *quoting Harrison v. NAACP*, 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

The possibility that the state courts, to sustain a prosecution, might construe § 12.1–31–04 to require proof of intent to engage in an unlawful activity is not sufficient to justify abstention. Plaintiffs' complaint is not that the statute has no state of mind requirement, but that the definition of paraphernalia is vague. A state court construction of § 12.1–31–04 dealing with the state of mind required would not avoid in whole or in part the necessity for federal constitutional adjudication and would not materially change the nature of the problem presented. *Bellotti v. Baird, supra.* The vagueness issue would remain. The statute is open to an indefinite number of interpretations arising out of a variety of factual situations and would require piecemeal adjudication in the state courts. *Baggett v. Bullitt*, 377 U.S. 360, 378–79, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). The state courts could rule on the question of vagueness, but this court should not abdicate to the state courts its responsibility to decide federal constitutional issues.

The second category of cases appropriate for abstention under the holding in *Colorado River Conservation District* is essentially the doctrine of *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford*, the Court held that abstention was proper where the only issue in the case concerned basic problems of a state policy not involving federal constitutional or statutory questions. The only issue in *Burford* dealt with an order of the Texas Railroad Commission regarding the spacing of oil wells. Because Texas had a "unified method for the formation of policy and determination of cases by the Commission and by the state courts," 319 U.S. at 333–34, 63 S.Ct. at 1107, the Court exercised its equita-

ble discretion to give the Texas courts the first opportunity to consider the questions raised.

■ The distinguishing feature of the cases where the *Burford* type of abstention has been held applicable is that there were no federal constitutional issues involved. Jurisdiction was based on diversity and only unique questions of state public policy were at issue. *See, e. g., Kaiser Steel Corp. v. W. S. Ranch Co.*, 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (condemnation of water rights); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (eminent domain). In the instant case jurisdiction is based on a federal question involving the validity under the federal constitution of a state criminal statute. Abstention under the *Burford* doctrine would be inappropriate.

## II. *The Motion for Preliminary Injunction*

The standard for the issuance of a preliminary injunction in the Eighth Circuit is as follows:

> A preliminary injunction should issue upon a clear showing of either (1) probable success on the merits *and* possible irreparable injury, *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of the hardships tipping decidedly toward the party requesting the preliminary relief.

*Fennell v. Butler*, 570 F.2d 263, 264 (8th Cir.), *cert. denied*, 437 U.S. 906 (1978). The second, alternative standard for the issuance of a preliminary injunction in *Fennell v. Butler* is more lenient than the traditional standard. *Dakota Wholesale Liquor, Inc. v. State of Minnesota*, 584 F.2d 847, 849 (8th Cir. 1978).

■ The point at issue on the motion before the court is the enjoining of the enforcement of a state criminal statute. The law is clear that a state criminal statute may not be enjoined unless there has been a clear showing of great and immediate harm. *Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Douglas v. City of Jeannette*, 319 U.S. 157, 163–64, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); *Watson v. Buck*, 313 U.S. 387, 401, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); *Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 70 L.Ed. 927 (1926). The reasons for requiring such a showing were stated in *Douglas v. City of Jeannette*, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943):

> The power reserved to the states under the Constitution to provide for the determination of controversies in their courts may be restricted by federal district courts only in obedience to Congressional legislation in conformity to the Judiciary Article of the Constitution. Congress, by its legislation, has adopted the policy, with certain well-defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent; and equitable remedies infringing this independence of the states— though they might otherwise be given— should be withheld if sought on slight or inconsequential grounds.

Furthermore, the great and immediate harm requirement is consistent with the concerns for federalism which lie at the heart of *Younger v. Harris*, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ The great and immediate harm requirement is not a separate standard for the issuance of a preliminary injunction. It merely describes the type of irreparable injury which must be shown to satisfy the traditional preliminary injunction standard.

The more lenient alternative standard of *Fennell v. Butler* does not dilute the great and immediate harm requirement because the Supreme Court has required a showing of great and immediate harm when an injunction is sought against the enforcement of state criminal statutes. The federal district courts are bound to follow the pronouncements of the Supreme Court on matters dealing with the exercise of federal equitable power. The great and immediate harm requirement embodies the doctrines of dual sovereignty and federalism, and thus approaches constitutional stature. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Douglas v. City of Jeannette,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). Thus, regardless of whether the harm that must be shown before the issuance of a preliminary injunction is called "irreparable injury" or "a balance of the hardships tipping decidedly toward the party requesting preliminary relief," that harm must be great and immediate when the statute sought to be enjoined is criminal.

■■■■ The mere threat or possibility of criminal prosecution does not constitute great and immediate harm.

No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid.

*Beal v. Missouri Pacific Railroad Corp.*, 312 U.S. 45, 49, 61 S.Ct. 418, 420, 85 L.Ed. 577 (1941). The rule that the possibility of criminal prosecution does not constitute great and immediate harm is an application of the broader rule that equity will not act when there is an adequate remedy at law. An accused should first set up and rely upon his defense in the state courts, even though that defense involves a challenge to the validity of a criminal statute. *Fenner v. Boykin*, 271 U.S. 240, 243–44, 46 S.Ct. 492, 70 L.Ed. 927 (1926), *quoted in Younger v. Harris*, 401 U.S. 37, 46, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The exception to the general rule is when it appears that the defense to the state criminal prosecution would not afford adequate protection because the threat to the federally protected right could not be eliminated by a defense to a single criminal prosecution or because the prosecuting authority is acting in bad faith to harass the plaintiff. *See Beal v. Missouri Pacific Railroad Corp.*, 312 U.S. 45, 50, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Fenner v. Boykin, supra.*

■■■■ Plaintiffs here have made no showing that they would not be able to vindicate their claimed federal right in a defense to a state criminal prosecution. Neither have they shown that defendant is acting or is likely to act in bad faith in bringing criminal actions against them. The possibility of criminal prosecution for violating N.D.Cent. Code § 12.1–31–04 does not, therefore, constitute sufficient reason to issue a preliminary injunction.

■■■■ Plaintiffs allege that they have suffered and will continue to suffer a loss of profits because of their efforts to comply with the statute. There is evidence before the court that plaintiffs in their efforts to comply with § 12.1–31–04 have suffered a profit decrease which has resulted in a discharge of some employees. This is not a clear showing of great and immediate harm.

■■■■ Plaintiffs also allege that § 12.1–31–04 violates their First Amendment rights to free speech. The mere allegation of a "chilling effect" on First Amendment rights is not sufficient to warrant the exercise of the court's equitable powers to restrain the enforcement of a state criminal statute. *Younger v. Harris*, 401 U.S. 37, 51, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Plaintiffs contend that the standard for enjoining the enforcement of state criminal statutes has been altered by *Doran v. Salem Inn, Inc.*, 42 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) and *Steffel v. Thompson,*

415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). *Steffel v. Thompson* dealt with the question of whether a declaratory judgment may be entered by a federal court when a state prosecution has been threatened but is not pending, and a showing of bad faith enforcement or other special circumstances has not been made. The court did not discuss the appropriateness of injunctive relief. 415 U.S. at 475, 94 S.Ct. 1209. In *Doran v. Salem Inn, Inc.* the court held that the issuance of a preliminary injunction where no state criminal prosecution is pending is not subject to the restrictions of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The court reaffirmed, however, the requirement that there be a showing of irreparable injury before an injunction should be issued.

The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits. It is recognized, however, that a district court must weigh carefully the interests on both sides. Although only temporary, the injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in the federal court. Such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger.* 422 U.S. at 931, 96 S.Ct. at 2568.

 Neither *Doran* nor *Steffel*, therefore, have changed the requirement that a showing of great and immediate harm be made before the enforcement of a state criminal statute will be enjoined.

Because plaintiffs have failed to clearly show great and immediate harm resulting from the enforcement of N.D.Cent.Code § 12.1–31–04, the court need not consider the probability of success on the merits or whether there are sufficiently serious questions going to the merits to make them a fair ground for litigation.

### III. *The Motion to Strike*

 Plaintiffs have moved pursuant to F.R.Civ.P. 12(f) to strike certain defenses pleaded by defendant which he has designated as affirmative defenses, but which plaintiffs contend do not constitute affirmative defenses. Those defenses are: (1) abstention, (2) jurisdiction, and (3) good faith. The nature of the defenses asserted is a legal question and whether or not they constitute affirmative defenses they do relate to relevant matters which are appropriate for argument to the court.

### IV. *Order*

IT IS ORDERED that plaintiffs' motion for preliminary injunction is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion to strike is DENIED.