## DORAN *v.* SALEM INN, INC., ET AL.

No. 74–337.   Argued April 21–22, 1975—Decided June 30, 1975

*Joseph H. Darago* argued the cause for appellant. With him on the brief was *Francis F. Doran, pro se.*

*Herbert S. Kassner* argued the cause for appellees. With him on the brief was *Ralph J. Schwarz, Jr.*

MR. JUSTICE REHNQUIST delivered the opinion of the Court.

Appellant is a town attorney in Nassau County, N. Y., who, along with other local law enforcement officials, was preliminarily enjoined by the United States District Court for the Eastern District of New York from enforcing a local ordinance of the town of North Hempstead. *Salem Inn, Inc.* v. *Frank,* 364 F. Supp. 478 (1973), aff'd, 501 F. 2d 18 (CA2 1974). In addition to defending the ordinance on the merits, he contends that the complaint should have been dismissed on the authority of *Younger* v. *Harris,* 401 U. S. 37 (1971), and its companion cases.

Appellees are three corporations which operate bars at various locations within the town. Prior to enactment of the ordinance in question, each provided topless dancing as entertainment for its customers. On July 17, 1973, the town enacted Local Law No. 1–1973, an ordinance making it unlawful for bar owners and others to permit waitresses, barmaids, and entertainers to appear in their establishments with breasts uncovered or so thinly draped as to appear uncovered. Appellees complied with the ordinance by clothing their dancers in bikini tops, but on August 9, 1973, brought this action in the District Court under 42 U. S. C. § 1983. They alleged that the ordinance violated their rights under the First and Fourteenth Amendments to the United States Constitution. Their pleadings sought a temporary re-

straining order, a preliminary injunction, and declaratory relief. The prayer for a temporary restraining order was denied *instanter,* but the motion for a preliminary injunction was set for a hearing on August 22, 1973.

On August 10, the day after the appellees' complaint was filed, and their application for a temporary restraining order denied, one of them, M & L Restaurant, Inc., resumed its briefly suspended presentation of topless dancing. On that day, and each of the three succeeding days, M & L and its topless dancers were served with criminal summonses based on violation of the ordinance.[1] These summonses were returnable before the Nassau County Court on September 13, 1973. The other two appellees, Salem Inn, Inc., and Tim-Rob Bar, Inc., did not resume the presentation of topless entertainment in their bars until after the District Court issued its preliminary injunction.

On September 5, 1973, appellant filed an answer which alleged that a criminal prosecution had been instituted against at least one of the appellees; the District Court was urged to "refuse to exercise jurisdiction" and to dismiss the complaint. App. 33.

On September 6, 1973, on the basis of oral argument and memoranda of law, the District Court entered an opinion and order in which it "[found] that (1) Local Law No. 1–1973 of the Town of North Hempstead is on its face violative of plaintiffs' First Amendment rights in that it prohibits across the board nonobscene conduct in the form of topless dancing, and (2) that the daily penalty of $500 for each violation of the ordinance, the prior state-court decision validating a similar ordinance,

---

[1] The ordinance provides that each day's violation constitutes a separate offense.

the overbreadth of the ordinance, and the potential harm to plaintiffs' business by its enforcement justify federal intervention and injunctive relief." 364 F. Supp., at 483. The court concluded by enjoining appellant "pending the final determination of this action . . . from prosecuting the plaintiffs for any violation of Local Law No. 1–1973 . . . or in any way interfering with their activities which may be prohibited by the text of said Local Law." *Ibid.* The court did address appellant's *Younger* contention, but held that the pending prosecution against M & L did not affect the availability of injunctive relief to Salem and Tim-Rob. As for M & L, it concluded that if federal relief were granted to two of the appellees, "it would be anomalous" not to extend it to M & L as well. *Id.,* at 482.

The Court of Appeals for the Second Circuit affirmed by a divided vote. It held that the "ordinance would have to fall," 501 F. 2d, at 21, and that the claim of deprivation of constitutional rights and diminution of business warranted the issuance of a preliminary injunction. The Court of Appeals rejected appellant's claim that the District Court ought to have dismissed appellees' complaint on the authority of *Younger* v. *Harris, supra,* and its companion cases. As to Salem and Tim-Rob, *Younger* did not present a bar because there had at no time been a pending prosecution against them under the ordinance. As for M & L, the court thought that it posed "a slightly different problem," 501 F. 2d, at 22, since the state prosecution was begun only one day after the filing of appellees' complaint in the District Court. The court recognized that this situation was not squarely covered by either *Younger* or *Steffel* v. *Thompson,* 415 U. S. 452 (1974), but concluded that the interests of avoiding contradictory outcomes, of conservation of judicial energy, and of a clearcut method for determining when federal

courts should defer to state prosecutions, all militated in favor of granting relief to all three appellees.

We deal first with a preliminary jurisdictional matter. This appeal was taken under 28 U. S. C. § 1254 (2), which provides this Court with appellate jurisdiction at the behest of a party relying on a state statute held unconstitutional by a court of appeals.[2] There is authority, questioned but never put to rest, that § 1254 (2) is available only when review is sought of a final judgment. *Slaker* v. *O'Connor,* 278 U. S. 188 (1929); *South Carolina Electric & Gas Co.* v. *Flemming,* 351 U. S. 901 (1956). But see *Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77, 82–83 (1958). The present appeal, however, seeks review of the affirmance of a preliminary injunction. We also are less than completely certain that the Court of Appeals did in fact hold Local Law 1–1973 to be unconstitutional, since it considered the merits only for the purpose of ruling on the propriety of preliminary injunctive relief. We need not resolve these issues, which have neither been briefed nor argued, because we in any event have certiorari jurisdiction under 28 U. S. C. § 2103. As we have previously done in an identical situation, *El Paso* v. *Simmons,* 379 U. S. 497, 502–503 (1965), we dismiss the appeal and, treating the papers as a petition for certiorari, grant the writ of certiorari.

Turning to the *Younger* issues raised by petitioner, we are faced with the necessity of determining whether the holdings of *Younger, supra, Steffel, supra,* and *Samuels* v. *Mackell,* 401 U. S. 66 (1971), must give way before such interests in efficient judicial administration as were relied upon by the Court of Appeals. We think

---

[2] For the purposes of § 1254 (2), local ordinances are treated as state statutes. See, *e. g., Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77 (1958).

that the interest of avoiding conflicting outcomes in the litigation of similar issues, while entitled to substantial deference in a unitary system, must of necessity be subordinated to the claims of federalism in this particular area of the law. The classic example is the petitioner in *Steffel* and his companion. Both were warned that failure to cease pamphleteering would result in their arrest, but while the petitioner in *Steffel* ceased and brought an action in the federal court, his companion did not cease and was prosecuted on a charge of criminal trespass in the state court. 415 U. S., at 455–456. The same may be said of the interest in conservation of judicial manpower. As worthy a value as this is in a unitary system, the very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to justify being heard before a single judge had they arisen within a unitary system.

We do not agree with the Court of Appeals, therefore, that all three plaintiffs should automatically be thrown into the same hopper for *Younger* purposes, and should thereby each be entitled to injunctive relief. We cannot accept that view, any more than we can accept petitioner's equally Procrustean view that because M & L would have been barred from injunctive relief had it been the sole plaintiff, Salem and Tim-Rob should likewise be barred not only from injunctive relief but from declaratory relief as well. While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them, this is not such a case—while respondents are represented

by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone.

Respondent M & L could have pursued the course taken by the other respondents after the denial of their request for a temporary restraining order. Had it done so, it would not have subjected itself to prosecution for violation of the ordinance in the state court. When the criminal summonses issued against M & L on the days immediately following the filing of the federal complaint, the federal litigation was in an embryonic stage and no contested matter had been decided. In this posture, M & L's prayer for injunction is squarely governed by *Younger.*

We likewise believe that for the same reasons *Samuels* v. *Mackell* bars M & L from obtaining declaratory relief, absent a showing of *Younger*'s special circumstances, even though the state prosecution was commenced the day following the filing of the federal complaint. Having violated the ordinance, rather than awaiting the normal development of its federal lawsuit, M & L cannot now be heard to complain that its constitutional contentions are being resolved in a state court. Thus M & L's prayers for both injunctive and declaratory relief are subject to *Younger*'s restrictions.[3]

---

[3] Respondent M & L urges in defense of its judgment that even if the case is controlled by the principles of *Younger* and *Samuels* v. *Mackell,* 401 U. S. 66 (1971), it may obtain injunctive and declaratory relief because of the presence of the requisite special circumstances. See *Younger,* 401 U. S., at 53–54. In particular, M & L claims that it was the subject of "repetitive harassing criminal prosecutions aimed at suppressing the expressive activity carried on"

The rule with regard to the coplaintiffs, Salem and Tim-Rob, is equally clear, insofar as they seek declaratory relief. Salem and Tim-Rob were not subject to state criminal prosecution at any time prior to the issuance of a preliminary injunction by the District Court. Under *Steffel* they thus could at least have obtained a declaratory judgment upon an ordinary showing of entitlement to that relief. The District Court, however, did not grant declaratory relief to Salem and Tim-Rob, but instead granted them preliminary injunctive relief. Whether injunctions of future criminal prosecutions are governed by *Younger* standards is a question which we reserved in both *Steffel,* 415 U. S., at 463, and *Younger* v. *Harris,* 401 U. S., at 41. We now hold that on the facts of this case the issuance of a preliminary injunction is not subject to the restrictions of *Younger.* The principle underlying *Younger* and *Samuels* is that state courts are fully competent to adjudicate constitutional claims, and therefore a federal court should, in all but the most exceptional circumstances, refuse to interfere with an ongoing state criminal proceeding. In the absence of such a proceeding, however, as we recognized in *Steffel,* a plaintiff may challenge the constitutionality of the state statute in federal court, assuming he can satisfy the requirements for federal jurisdiction. See also *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498, 509 (1972).

No state proceedings were pending against either Salem or Tim-Rob at the time the District Court issued its preliminary injunction. Nor was there any question that they satisfied the requirements for federal jurisdiction. As we have already stated, they were assuredly entitled to declaratory relief, and since we have previously

at its bar. Brief for Appellees 35. The District Court did not have occasion to consider this issue, and we decline to do so on the basis of the spare record before us.

recognized that "[o]rdinarily . . . the practical effect of [injunctive and declaratory] relief will be virtually identical," *Samuels,* 401 U. S., at 73, we think that Salem and Tim-Rob were entitled to have their claims for preliminary injunctive relief considered without regard to *Younger*'s restrictions. At the conclusion of a successful federal challenge to a state statute or local ordinance, a district court can generally protect the interests of a federal plaintiff by entering a declaratory judgment, and therefore the stronger injunctive medicine will be unnecessary. But prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction; unless preliminary relief is available upon a proper showing, plaintiffs in some situations may suffer unnecessary and substantial irreparable harm. Moreover, neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute.

The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits. It is recognized, however, that a district court must weigh carefully the interests on both sides. Although only temporary, the injunction does prohibit state and local enforcement activities against the federal plaintiff pending final resolution of his case in the federal court. Such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger.*

But while the standard to be applied by the district court in deciding whether a plaintiff is entitled to a preliminary injunction is stringent, the standard of appellate

932

review is simply whether the issuance of the injunction, in the light of the applicable standard, constituted an abuse of discretion. *Brown* v. *Chote*, 411 U. S. 452, 457 (1973). While we regard the question as a close one, we believe that the issuance of a preliminary injunction in behalf of respondents Salem and Tim-Rob was not an abuse of the District Court's discretion. As required to support such relief, these respondents alleged (and petitioner did not deny) that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy. Certainly the latter type of injury sufficiently meets the standards for granting interim relief, for otherwise a favorable final judgment might well be useless.

The other inquiry relevant to preliminary relief is whether respondents made a sufficient showing of the likelihood of ultimate success on the merits. Both the District Court and the Court of Appeals found such a likelihood. The order of the District Court spoke in terms of actually holding the ordinance unconstitutional, but in the context of a preliminary injunction the court must have intended to refer only to the likelihood that respondents ultimately would prevail. The Court of Appeals properly clarified this point. 501 F. 2d, at 20–21.

Although the customary "barroom" type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California* v. *LaRue,* 409 U. S. 109, 118 (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue,* however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could

therefore ban such dancing as a part of its liquor license program.

In the present case, the challenged ordinance applies not merely to places which serve liquor, but to many other establishments as well. The District Court observed, we believe correctly:

> "The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in 'any public place' with uncovered breasts. There is no limit to the interpretation of the term 'any public place.' It could include the theater, town hall, opera house, as well as a public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the 'Ballet Africains' and a number of other works of unquestionable artistic and socially redeeming significance." 364 F. Supp., at 483.

We have previously held that even though a statute or ordinance may be constitutionally applied to the activities of a particular defendant, that defendant may challenge it on the basis of overbreadth if it is so drawn as to sweep within its ambit protected speech or expression of other persons not before the Court. As we said in *Grayned* v. *City of Rockford,* 408 U. S. 104, 114 (1972):

> "Because overbroad laws, like vague ones, deter privileged activity, our cases firmly establish appellant's standing to raise an overbreadth challenge."

Even if we may assume that the State of New York has delegated its authority under the Twenty-first Amendment to towns such as North Hempstead, and that the ordinance would therefore be constitutionally valid under *LaRue, supra,* if limited to places dispensing alcoholic beverages, the ordinance in this case is not so

limited. Nor does petitioner raise any other legitimate state interest that would counterbalance the constitutional protection presumptively afforded to activities which are plainly within the reach of Local Law 1–1973. See *United States* v. *O'Brien,* 391 U. S. 367, 377 (1968).

In these circumstances, and in the light of existing case law, we cannot conclude that the District Court abused its discretion by granting preliminary injunctive relief. This is the extent of our appellate inquiry, and we therefore "intimate no view as to the ultimate merits of [respondents'] contentions." *Brown* v. *Chote, supra,* at 457. The judgment of the Court of Appeals is reversed as to respondent M & L, and affirmed as to respondents Salem and Tim-Rob.

*It is so ordered.*

MR. JUSTICE DOUGLAS, concurring in the judgment in part and dissenting in part.

While adhering to my position in *Younger* v. *Harris,* 401 U. S. 37, 58 (1971) (dissenting opinion), I join the judgment of the Court insofar as it holds that Salem Inn and Tim-Rob were entitled to a preliminary injunction pending disposition of their request for declaratory relief. I do not condone the conduct of M & L in violating the challenged ordinance without awaiting judicial action on its federal complaint, but like the Court of Appeals, I find no compelling reason to distinguish M & L from the other respondents in terms of the relief which is appropriate. I would therefore affirm the judgment below in all respects.