**COAST HOLDING CORP., John Westley, and John Valdina, Plaintiffs,**

v.

**Robert McGUIRE, Individually and as Police Commissioner of the City of New York, and Allen Schwartz, Individually and as Corporation Counsel of the City of New York, Defendants.**

No. 79 Civ 4659 (LBS).

United States District Court,
S. D. New York.

Oct. 3, 1979.

Kassner & Detsky, P. C., Herbert Kassner, New York City, for plaintiffs.

Allen G. Schwartz, Corp. Counsel of the City of New York, John W. Russell, New York City, for defendants.

## OPINION

SAND, District Judge.

Plaintiffs Coast Holding Corp., John Westley and John Valdina seek federal injunctive relief barring interference with their businesses by defendant officials of the City of New York who are currently enforcing a preliminary injunction issued by the Supreme Court of the State of New York, New York County. Defendants move to dismiss the complaint pursuant to F.R. Civ.P. 12(b)(6). For the reasons stated herein, plaintiffs' request for injunctive relief is denied, and defendant's motion to dismiss is granted.

Coast Holding Corp. operates 16 coin operated film machines or peep shows, John Westley sells books, magazines and films,

and John Valdina operates a live show booth set up. All three businesses are located in what appears to be a single entrance store front of some 1800 square feet at 691 Eighth Avenue, New York, New York. Exhibit 1 to affidavit of John W. Russell. The three plaintiffs are each individual sub-lessees (they describe themselves as "licensees") of a corporation variously described in the plaintiffs' moving papers as "691 8th Ave Assoc." or "691 8th Ave Pub. Associates Inc.", which is not a party here. It is not clear who owns the premises. The "one on one" booths which are at the root of this controversy are located on the same premises. Allen Orland, who is the operator of those booths and who is described in plaintiffs' papers as a sub-lessee of John Valdina, is not a party here.

The dispute between the parties arises out of allegations by New York City officials that acts of prostitution were regularly solicited in or around the "one on one" booths. These booth have been described as follows:

"For the payment of a token, purchased for a dollar at a change booth on the premises, they went into such booths. Females then entered from the opposite side, separated from the patron by a plexiglass partition. There are circular holes cut in these partitions, about waist high and about 9 or 10 inches in diameter. The females, if not already nude, remove their scanty clothing. The officers allege that without any preliminary conversation, they were asked if they wanted a "hand job" (to be masturbated) for five dollars. In two instances, the officers were told by the females 'to take out [your] penis.'

"The officers also related that they were solicited by female employees for 'hand jobs' while in the 'Live Peep Show' booths and elsewhere on the premises. When they asked male employees what happens in the 'One on One' booths, they were told, 'That [you] would see.' They also overheard other patrons being solicited for such sexual acts to be performed in the 'One on One' booths." *People v. Juster Associates, et al.,* Sup.Ct. N.Y.Co., Index No. 41960/79, decided September 14, 1979.

These allegations led to an application by the City of New York for injunctive relief and civil penalties pursuant to Article 23, Title II of the New York Public Health Law, and Chapter 16, Title C of the Administrative Code of the City of New York. Apparently arguing that the four businesses located on the premises constituted a single, integrated store, defendants herein [1] sought to have the state court enjoin the persons and business entities named in the order to show cause [2] from using or occupying the premises in accordance with the provisions of N.Y.Pub. Health Law §§ 2321(1) and 2329 (McKinney's 1977). The City also sought an order directing that the premises be closed *pendente lite.*

The state court granted the TRO on July 26, 1979, and the hearing on the City's motion for a preliminary injunction was scheduled for July 30, 1979. On July 27, 1979, defendants' motion to vacate the TRO pursuant to CPLR 6314 was denied after oral argument before the state court. The hearing on the preliminary injunction was held as scheduled on July 30, and that motion was sub judice at the time the action was brought before this Court on September 6, 1979.[3] On September 14, 1979, Mr. Justice Ascione of the New York Supreme

Court rendered the opinion quoted above in which the motion for a preliminary injunction was granted in all respects. In that opinion, the Court held *inter alia* that the acts alleged to have taken place on the premises involved constituted "prostitution" within the meaning of applicable state law.

■ In this Court, plaintiffs urge that the premises at 691 Eighth Avenue are used for multiple purposes and that among these purposes are the sale of books, magazines and the showing of films, all of which are entitled to First Amendment protection. They contend that the scope of the injunctive relief granted by the state court is overly broad, and that a procedure should be adopted which will allow them to continue those activities not alleged to involve prostitution without regard to the action taken with respect to the "one on one" booths.[4] The Court concludes that the principles of comity and federalism set forth in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and elaborated upon with regard to civil suits in *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) dictate that this Court should not interfere with the pending state proceeding.[5]

1. The state court proceeding was brought by New York City. While the defendants herein were not state court plaintiffs in their individual capacities, this Court concludes that the only real interests being asserted are those of New York City. The state court plaintiffs and federal defendants will thus be referred to herein as "the City".

2. See pages 412–413, *infra,* for a discussion of the parties named in the state proceeding.

3. The plaintiffs came before this Court with an order to show cause and a request for a TRO and a preliminary injunction on September 6, 1979. The TRO was denied, but a hearing on the preliminary injunction was scheduled for September 12, 1979. After plaintiffs' attorney requested a delay, the hearing was held on September 14, 1979. Neither the Court nor the defendants learned that the state court had issued the preliminary injunction that day until after the hearing.

4. Plaintiffs have also contended, primarily at oral argument, that the state court procedures for issuing restraining orders and preliminary injunctions without evidentiary hearings vio-

late due process. Such an allegation could, under proper circumstances, state a claim upon which relief could be granted in a federal court. In the case at hand, however, given both the absence of anything other than the most general allegations concerning such a claim in this complaint and the fact that in the pending state court proceedings plaintiffs herein have objected to the issuance of a preliminary injunction where the facts are "sharply in conflict", this Court concludes that the constitutional issue raised by plaintiffs is already before the state court. Consequently, in accord with the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) discussed *infra,* we do not here consider this aspect of plaintiffs' claim.

5. This holding precludes consideration of the merits of plaintiffs' contention concerning the scope of the state injunctive relief. It is obvious, however, that placing a book stand in a house of prostitution would not immunize those premises from the scope of local nuisance laws or ordinances. It is equally clear that a book store cannot fairly be categorized as a place of prostitution because occasional

█ Plaintiffs raise several arguments before this Court in an attempt to avoid the result mandated by *Younger.* Plaintiffs first contend that since they are not parties to the state court proceeding, *Younger* is not an obstacle to an adjudication by this Court of their claims. It is clear, however, that *Younger* is not limited to persons named in a state court proceeding; resort to a federal forum is barred to all third parties whose interests are sufficiently "intertwined" with those who are parties to such a proceeding. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

In *Hicks,* a theatre owner sought federal declaratory and injunctive relief against enforcement of a state obscenity statute. At the time the federal action was brought, state criminal charges were pending against two of the theatre's employees and copies of film had been seized. The theatre owner was not made a party to the state action until after the federal suit was commenced. The Supreme Court of the United States reversed the grant of relief by a 3 judge district court, holding, *inter alia,* that even though the federal plaintiff was not a party to the state proceeding at the time the federal action was brought, his interest and that of his employees were so "intertwined" that federal relief would interfere with the state prosecution. As evidence of the relationship between the state and federal parties, the court pointed to the federal plaintiffs' "substantial stake in the state proceedings", the lack of a clear showing that

plaintiffs could not recover their property and raise their federal claims in the state proceedings and the fact that the federal plaintiffs' lawyers also represented the state court defendants. The court concluded that "the rule in *Younger v. Harris* is designed to 'permit state courts to try state cases free from interference from federal courts', . . . particularly where the party to the federal case may fully litigate his claim before the state court. Plainly, '[t]he same comity considerations apply' . . . where the interference is sought by some, such as appellees, not parties to the state case." *Hicks v. Miranda,* 422 U.S. at 349, 95 S.Ct. at 2292. *Younger* would thus preclude this action going forward if there is a sufficient nexus between the federal plaintiffs in this proceeding and those named as defendants in the state court matter.[6] We believe it is clear from the papers that there is such a nexus and that no evidentiary hearing is required on that issue.

█ Despite the proliferation of leasehold interests among the federal plaintiffs and those named as state defendants, it appears that the four businesses involved here operate as an integrated commercial entity under single management and control. The concerted nature of the parties' conduct as well as the close physical proximity within which it took place support the conclusion that the parties' interests are "intertwined" in the *Hicks* sense.[7] The

acts of solicitation take place on those premises. The question whether the premises involved herein constitute a place of prostitution or a place where First Amendment rights are being exercised is a·question which the state court can readily deal with. Moreover, plaintiffs do not deny that they have ready access to state appellate courts to review the preliminary injunction issued by Mr. Justice Ascione.

**6.** This Court does not read *Hicks v. Miranda, supra,* to be limited, as plaintiffs urge, to an employer-employee relationship. ·See discussion *infra.*

**7.** These facts clearly distinguish this case from *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), where the Supreme Court held that two corporations which

operate bars providing topless entertainment could challenge a county ordinance in federal court despite the fact that a third such corporation named as a defendant in a pending state proceeding was precluded by *Younger* from making a similar challenge. In so holding, Mr. Justice Rehnquist, who had joined in the majority opinion in *Hicks* decided the same term, wrote:

"While there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* considerations which govern any one of them, this is not such a case;—while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control and

Court notes that not only are the state court defendants and the federal plaintiffs represented by the same counsel, but also that some of the affidavits submitted in this proceeding are virtually identical with those submitted in the state action. Plaintiffs clearly have a "substantial stake" in the state proceeding and, as we have already noted, plaintiffs can and have raised their federal claims before the state courts. The relationship which existed among the parties plaintiff in this proceeding and the parties defendant in the state court proceeding are sufficiently intertwined to render *Younger* fully applicable here.

Even if this Court were to find that the parties were not intertwined under *Hicks*, a strong argument can be made that the plaintiffs herein were in fact parties to the state proceeding. The named defendants in that proceeding were a number of specifically identified individuals and entities connected with the premises, including Martin Hodas, said by defendants herein to be a principal of plaintiff Coast Holding Corp. In addition, the order to show cause and TRO issued on July 26, 1979 named as defendants:

> "John Doe" fictitious name, true names unknown, the parties intended being the owners, lessees, operators or occupants of an establishment doing business as "Paradise Alley" and all persons claiming any right, title or interest in the property which is the subject of this action."

*See* N.Y.Pub. Health Law § 2321(8) (McKinney's 1977) (dealing with the summons and complaint in an action brought to enjoin the operation of a house of prostitution). Finally, plaintiff John Westley was served with process and appeared as a party defendant in the state court proceedings. On the record as it appears before this Court, it would trivialize the principles of *Younger v. Harris* and *Hicks v. Miranda* to

allow plaintiffs, whose interests are so closely linked to the state court defendants, to seek an adjudication in a federal court of issues that are already properly before the New York courts.

■ Plaintiffs also contend that if *Younger* principles apply to a request for federal relief in this context, the circumstances surrounding the state proceedings involved here bring this case within the two exceptions recognized in *Younger*. Plaintiffs claim first, that absent federal injunctive relief they will suffer "irreparable harm both great and immediate" and second, that the state court action is part of a continuing city program to subject sex-related businesses to repeated bad faith prosecutions and official harassment. The Court finds that the circumstances surrounding the state proceedings do not support either of these assertions.

In establishing the parameters for the *Younger* exceptions, the Supreme Court described the requirement of "irreparable harm both great and immediate" as follows:

> ". . . in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' Certain types of injury, in particular the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered irreparable harm in the special legal sense of that term. Instead, the threat to the plaintiffs' federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution." *Younger, supra* at 46, 91 S.Ct. at 751.

Although their businesses have necessarily been disrupted by the preliminary injunction, plaintiffs do not deny that they have immediate access to the state appellate

---

management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone."
422 U.S. at 928–929, 95 S.Ct. at 2566. On the facts present here, it cannot be said that the federal plaintiffs and the state defendants are

"unrelated in terms of ownership, control and management". Rather, we conclude that those interested in the four businesses involved herein acted in concert within the confines of a single premises, with full awareness of what each other was doing and with a joint interest in such activities.

courts. Those courts are in the best position to review the propriety of the issuance of the injunction and plaintiffs' constitutional claims in the manner least obtrusive to the proceedings currently before the state courts. Under these circumstances, plaintiffs' claim of "irreparable" or "immediate" harm is without merit.

■ With regard to plaintiffs' claim of bad faith and harassment, the Court notes the affidavit submitted in support of the defendants' cross motion to dismiss by Carl B. Weisbrod, Esq., Director of the Midtown Enforcement Project (MEP), an agency within the Office of the Mayor of the City of New York. The principal thrust of that affidavit is to call the Court's attention to the fact that the claim of bad faith and harassment which appears in paragraphs "13" through "52" of plaintiffs' complaint, "recites a series of allegations regarding events occurring between 1975 and 1977, inclusive. I also note the remarkable paucity of other facts or allegations regarding events occurring since the end of 1977." Weisbrod affidavit ¶ 4. Mr. Weisbrod's contention is that apart from whatever might have occurred in the past, ". . . [i]t is apparent that, for at least the past year and a half, the MEP has acted judiciously with due regard for the civil liberties of all our citizens." Weisbrod affidavit ¶ 32. Plaintiffs, of course, deny that abusive procedures are no longer utilized in the defendants' efforts to deal with "sex-related businesses" in Midtown Manhattan.

This Court is not called upon to resolve this issue on the merits. We note merely that plaintiffs have not made such a showing of current abusive practices as would warrant federal judicial intervention in a matter which, insofar as it deals with sanctions against premises devoted to prostitution, is so peculiarly a state concern.

Plaintiffs' motion for injunctive relief is denied. Defendants' motion to dismiss is granted.

SO ORDERED.