**AURA NIGHTCLUB, a Florida Corporation, and Radicals Nightclub, Inc., d/b/a/ Cyberzone, a Florida Corporation, Plaintiff,**

v.

**ORANGE COUNTY, a political subdivision of the State of Florida, and Kevin Beary, Sheriff of Orange County, in his official capacity only, Defendants.**

**No. 6:01–CV–6–00214–ORL–19DAB.**

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 17, 2001.

David A. Wasserman, Wasserman & Walters, Winter Park, FL, for plaintiff.

Alan Lawson, Orange County Attorney's Office, Walter A. Ketcham, Jr., Jeanelle G. Bronson, Grower, Ketcham, More, Rutherford, Noecker, Bronson & Eide, P.A., Orlando, FL, for defendants.

### ORDER

FAWSETT, District Judge.

This case comes before the Court on the following:

(1) Plaintiffs' Verified Second Amended Application for Preliminary Injunction (Doc. No. 55, filed Aug. 1, 2001);

(2) Memorandum of Law in Support of Plaintiffs' Second Amended Application for

---

Preliminary Injunction (Doc. No. 58, filed August 14, 2001);

(3) Orange County's brief in Opposition to Plaintiffs' Second Amended Application for Preliminary Injunction (Doc. No. 61, filed August 30, 2001);

(4) Defendant, Kevin Beary's, Response to Plaintiffs' Second Amended Application for Preliminary Injunction (Doc. No. 69, filed August 30, 2001).

## BACKGROUND

On or about February 2, 2001, Orange County enacted a temporary ordinance establishing a 60–day moratorium on so called "rave clubs" to allow the County time to study and enact permanent regulations of these establishments. The ordinance was enacted in response to the perception, supported, *inter alia*, by police records and personal testimony of club patrons and others before the Orange County Board of Commissioners, that such clubs were the source of much illegal drug trafficking and predatory sex acts. *See* (Doc. No. 37, filed June 15, 2001 with supporting affidavits). Plaintiff Cyberzone was one of the most frequented rave clubs and was often the subject of undercover police raids which resulted in numerous arrests for possession and sales of illegal drugs. *Id.*

In an effort to solve its difficulties with Orange County and the Sheriff's Department, Cyberzone agreed to permanently close the business and to begin operation as new club, Aura, at the same location as Cyberzone. *(See* Doc. No. 56, Exhs. B and C.) Aura agreed to make a number of building and landscaping improvements and to institute a new musical format. *Id.*

On February 9, 2001, Aura was granted an occupational license to operate a "dance hall and retail soda" business at Cyberzone's former location. *See* (Doc. No. 37, Appendix 8). However, before Aura could actually open for business, it was required to acquire a Certificate of Occupancy from the County's Building Division. (Sections 9–103 and 25–53, Orange County Code). When Aura applied for a Certificate of Occupancy, routine inspections revealed numerous code violations. (Doc. No. 37, Appendix Exhibits 3–7). In spite of the violations cited, and without the required Certificate of Occupancy, the business opened on February 16, 2001, under the name of "Aura" but with a sign announcing, "Cyberzone is Back."[1] *See* (Doc. No. 39, Affidavit of Michael Osborne, and accompanying photographs).

Also on February 16, 2001, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief and Demand for Jury Trial with this Court (Doc. No. 1) challenging the temporary Rave Ordinance. Plaintiffs alleged that the ordinance was unconstitutional on its face and constituted unlawful prior restraint on the Plaintiffs' business.

While Aura challenged the Building Department's decision not to grant it a Certificate of Occupancy before the Building Codes' Board of Adjustment, the County, on April 10, 2001, enacted a permanent Rave Ordinance, No. 2001–08. The ordinance restricts dance clubs, even if they do not sell alcohol, from operating during the hours between 2:00 a.m. and 7:00 a.m. However, the ordinance exempts a bona fide dance studio from its terms.

In response to the County's permanent Rave Ordinance, on July 13, 2001, Plain-

---

[1]. The Amended Complaint in this case was verified by Daniel Davis as President of Radi-cals Nightclubs d/b/a Cyberzone, Inc., and President of Aura Nightclubs, Inc.

tiffs Cyberzone and Aura each obtained licenses to operate as a dance studio and dance hall at the original location of Cyberzone. (Doc. No 155) However, on the same day, the County informed Plaintiffs that only Cyberzone was qualified for business, and that Aura would be required to apply for a new certificate of occupancy. *Id.* On July 13, 2001, the business was reopened, under the name of "Aura" by either or both Cyberzono or Aura, allegedly as a dance school and dance hall. *Id.*

On July 14, 2001, Sergeant Bruce McMullen, an undercover Orange County Sheriff's Deputy, visited Cyberzone/Aura location after 2 a.m. to see if it was operating as a legitimate dance studio. (Doc. No. 64, affidavit of Bruce McMullen). After determining that no dance lessons were being offered or provided, Sgt. McMullen contacted his supervisor, Lieutenant Michael Osbourne, to apprise him of the situation. *Id.* Lt. Osbourne, Sgt. McMullen and other uniformed deputies confronted the owner of the club, Dan Davis, and informed him that since the club was not operating as a legitimate dance studio, it was not entitled to remain open past two a.m. *Id.* They asked Mr. Davis to close the club. When he refused to do so, Mr. Davis was arrested. *Id.* Upon being arrested, Mr. Davis turned control of the club over to Dwayne Jones who was believed to the manager of the club. When Mr. Jones also refused to close the club, he was likewise arrested. *Id. See also* (Doc. No. 64, arrest reports).

Mr. Davis was arrested again the following night, July 15, 2001, for operating the business in violation of the rave ordinance. Mr. Davis has been arraigned, probable cause for violation of the ordinance has been found by the County Court for Orange County, Mr. Davis has entered a plea of not guilty, and a trial date has been set for the period between September 24–October 4, 2001.

## ANALYSIS

Since Plaintiffs now have subjected themselves to state criminal charges, under the *Younger* abstention doctrine this Court is foreclosed from ruling on their objections to the Rave Ordinance. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[2] *See also Doran v. Salem Inn. Inc.,* 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) ("Although only temporary, a [preliminary] injunction does prohibit state and local law enforcement activities against the federal plaintiff pending final resolution of his case in the federal court. Such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger*").

In their Memorandum of Law in Support of Plaintiffs' Second Amended Appli-

---

2. Plaintiffs argue that violation of a civil code is not properly a criminal offense. However, in Section 25–21(a)(1), "Penalties and Remedies," the Rave Ordinance states, "a violation of this division may be punished as provided in section 1–9 of this code and Section 125.69 of Florida Statutes." Section 125.69(1) of Florida Statutes states: "Violations of county ordinances shall be prosecuted in the same manner as misdemeanors are prosecuted. Such violations shall be prosecuted in the name of a state in a court having jurisdiction of misdemeanors by the prosecuting attorney thereof and upon conviction shall be punished by a fine not to exceed $500 or by imprisonment in the county jail not to exceed 60 days or by both such fine and imprisonment..." Also, in the *Doran* case, the United States Supreme Court upheld the principle that a federal court correctly refused to intervene on the basis of *Younger* when a plaintiff was charged with violating a town ordinance prohibiting topless dancing. *See Doran v. Salem Inn, Inc.,* 422 U.S. at 929, 95 S.Ct. 2561.

cation for Preliminary Injunction (Doc. No. 55). Plaintiffs Aura/Cyberzone raise a facial challenge to the Orange County Rave Ordinance, which ordinance they assert has not been applied in any manner to Plaintiff Aura. Therefore, they argue, Plaintiff Aura should be able to litigate its claims in federal court in spite of the pending state court proceedings. However, the state criminal proceedings are not filed against either Aura or Cyberzone, but against their President, Daniel Davis, and an employee, Dwayne Jones. The nature of Mr. Davis' relationship to both clubs, and the close links between the two establishments provide a basis for treating the Plaintiffs here as a single entity for purposes of this motion.

The U.S. Supreme Court addressed a similar issue in the case of *Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). In *Hicks*, police seized four copies of the film "Deep Throat," each of which had been shown at the Pussycat Theatre in Buena Park, Orange County, California. *Id.* An eight-count criminal misdemeanor charge was lodged against two employees of the theater. A Show Cause Order was issued by the Superior Court of Orange County against Vicent Miranda d/b/a Walnut Properties, Inc. and the two employees. *Id.* at 335, 95 S.Ct. 2281. Miranda did business as Walnut Properties, and Pussycat Theater was a California corporation of which Miranda was president and a stockholder. *Id.* at FN2.

Defendants brought suit in federal court in California for declaratory relief as to the constitutionality of the California obscenity statute. The court agreed that the statute was unconstitutional and granted injunctive relief. *Id.* at 349, 95 S.Ct. 2281. The U.S. Supreme Court reversed, finding that under the *Younger* doctrine, the federal court should have stayed its proceedings until the state criminal case was settled. *Id.* It also addressed the issue present in this case, finding that the interests of the theater's employees were so "intertwined" with the theater owner's interests that the criminal case pending against the employees mitigated against the federal court's intervention under *Younger*. *Id.* The Court stated that the same comity conditions underlying *Younger* applied even where the interference was sought by some . . . not parties to the state case. *Id.*

In the instant case, it is clear that the interests of Cyberzone and Aura are closely intertwined. Both are solely owned by Mr. Dan Davis. When Mr. Davis agreed to close Cyberzone, it was the understanding that he could open Aura at the same location and in the same building as Cyberzone. When he opened Aura, the sign over the building proclaimed the new club to be named Aura, but a sign out front proclaimed "Cyberzone is Back." Under these circumstances, *Hicks* clearly applies.

This Court is confident that the state court is competent to deal with the constitutional issues raised in Plaintiffs' Application for Preliminary Injunction. In the interest of comity and pursuant to the *Younger v. Harris* abstention doctrine, the Court refuses to interfere with the state court process.

### CONCLUSION

For the foregoing reasons, Plaintiffs' Verified Second Amended Application for Preliminary Injunction (Doc. No. 55) is ***DENIED***.