LUTTIG, Circuit Judge,
concurring:
I concur in all but Part III.A of the majority’s opinion. I do not concur in that part of the court’s opinion because I have long believed that our decisions in both Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir.1977), and Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353 (4th Cir.1991), contravene Supreme Court precedents by overvaluing the inquiry into the relative equities of granting and denying a requested injunction to an extent that essentially denies any value whatsoever to the inquiry into the likelihood of success on the merits. Indeed, I believe that these opinions virtually eliminate altogether the inquiry into the likelihood of success on the merits — in doctrine, though, as I explain below, no longer in practice — through their holdings that the balance of equities is largely determinative of the appropriateness of an injunction and that if there is a decided tip of the balance of equities in favor of the plaintiff, then the injunction should be granted upon a showing merely that the issues presented are “fair ground for litigation.”
The Supreme Court has consistently applied the four-part test governing the decision on an injunction (the plaintiffs likelihood of success on the merits, the harm to the plaintiff in the absence of the injunction, the harm to the defendant upon grant of the injunction, and public interest) without ever distinguishing among the four parts as to analytical order, priority, or weight. And it has collectively referred to these undifferentiated parts as “the traditional standard” for injunctions. See Doran v. Salem Inn, Inc., 422 U.S. 922, 931, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).
The Supreme Court has never held that the hardships of the plaintiff and the defendant should be weighed first, before any inquiry into the likelihood of success on the merits is undertaken. But see Blackwelder, 550 F.2d at 195 (“[T]he first step in a Rule 65(a) situation is for the court to balance the ‘likelihood’ of harm to the plaintiff against the ‘likelihood’ of harm to the defendant.”).
The Court has never held that the relative hardships are, together, the two principal inquiries of the four. But see Blackwelder, 550 F.2d at 196(“The two more important factors are those of probable irreparable injury to the plaintiff without a decree and of likely harm to the defendant with a decree.”).
*869 It has never held, or even suggested, that the four inquiries are analytically interrelated. But see Blackwelder, 550 F.2d at 196 (“[A]ll four [questions] are intertwined and each affects in degree all the others”).
It has never held that the importance of the likelihood of success factor varies depending upon the magnitude of the difference between the harm that will be suffered by the plaintiff in the absence of the injunction and the harm that the defendant will suffer if the injunction is granted. But see Blackwelder, 550 F.2d at 195(“[t]he importance of probability of success increases as the probability of irreparable harm diminishes”); id. (explaining that it is only when the relative harms are in “equipoise” that “the probability of success begins to assume real significance”)(quoting with approval West Virginia Conservancy v. Island Creek Coal Co., 441 F.2d 232, 235 (4th Cir.1971)).
The Supreme Court has never held, under any circumstance, that it is sufficient for issuance of an injunction that the plaintiff not have engaged in frivolous litigation. But see Blackwelder, 550 F.2d at 195-96 (explaining that if the plaintiffs need for protection outweighs that of the defendant, it “is enough” for issuance of the injunction that the plaintiff “has not embarked on frivolous litigation”) (quoting West Virginia Conservancy, 441 F.2d at 235).
The Court has never even held that, if the balance of hardships strongly favors the plaintiff, then the injunction should ordinarily be granted, provided the questions presented are fair ones for litigation. But see Blackwelder, 550 F.2d at 195(holding that “if a decided imbalance of hardship should appear in plaintiffs favor,” it will ordinarily be enough that the plaintiff has raised questions going to the merit of the dispute that are so “serious, substantial, difficult and doubtful as to make them fair ground for litigation”) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir.1953)); but compare Blackwelder, 550 F.2d at 195, with Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929) (noting only that “[w]here the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied ... while if the injunction be granted the injury to the opposing party ... will be inconsiderable, ... the injunction usually will be granted”) (emphasis added).
Much less has the Supreme Court ever held that if the balance of hardships tips in favor of the plaintiff — even decidedly— that the likelihood of success test is entirely displaced by some other formulation. But see Blackwelder, 550 F.2d at 195(hold-ing that “if a decided imbalance of hardship should appear in plaintiffs favor, then the likelihood-of-success test is displaced by Judge Jerome Frank’s famous formulation. ...”).
And the Court most certainly has never held that if the hardship balance tips in favor of the plaintiff, then no showing whatsoever of the likelihood of success is required. But see Blackwelder, 550 F.2d at 196(holding that if the balance of hardships “is struck in favor of plaintiff,” then the plaintiff “need not show a likelihood of success” on the merits, provided that a “serious” question is presented).
To the contrary of all of the above, barely a year and a half before this court decided Blackwelder, the Supreme Court — in an opinion nowhere even cited or referenced in our Blackwelder decision — discussed and applied the applicable four-factor test, precisely as had the district court whose opinion we criticized and whose judgment we reversed in Blackwelder; did not distinguish among any of the four factors as to their order of *870 consideration, hierarchy of importance, or comparative weights; characterized this four-factor test as the “traditional” standard governing injunctions; and unmistakably required that the plaintiff show a likelihood of success on the merits in order to prevail. Said the Court, in clear and unequivocal terms:
The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury and also that he is likely to prevail on the merits.
Doran v. Salem Inn, Inc., 422 U.S. at 931, 95 S.Ct. 2561; id. at 932, 95 S.Ct. 2561(“The other inquiry relevant to preliminary relief is whether respondents made a sufficient showing of the likelihood of ultimate success on the merits.”).
And Doran was a full, authored opinion for the entire Supreme Court, written by no less a figure than the present Chief Justice of the United States. This, in stark contrast to the opinion that was little more than the presumptive authority for the standard we adopted in Blackwelder.* That authority, Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972, was a single-page, per curiam opinion, in a case in which the Court acknowledged that a determination of the likelihood of success on the merits was impossible because the motion for injunction was submitted on the basis of ex parte affidavits which were in conflict as to the material facts. Tellingly, the Supreme Court itself has cited Ohio Oil Co. only a handful of times in the three-quarters of a century since its decision, and it has not done so at all since 1945, over half a century ago.
I believe that we are complacent about, if we did not also adopt, our Circuit’s total inversion of the correct injunction standard, because of its comparative ease of application (ease, that is, as compared to the more intellectually rigorous and demanding inquiry into the legal merits of the claims) and the refuge from accountability that it provides us as judges, as a consequence of the fact that we can never be proven wrong in our “balancing” of prospective harms.
Who doubts, for instance, the ease with which we can lean back in our high-back chairs and speculate as to the “harms” that might befall one or the other of the parties, or the public generally, depending upon whether we award or withhold the requested injunction; or the contrast of that ease with the genuine effort required to research and actually read the governing law under the constraints of time, and then methodically apply that law to the often-complicated* facts that are presented by injunction requests? By the same token, who would seriously dispute that, whereas the likelihood that a party will succeed on the merits of its claim is objectively ascertainable, and therefore meaningfully reviewable, through the application of neutral principles of reported law to the particular facts of the case, one’s subjective evaluation of the relative harms that might be suffered, and the policies that will be advanced and impeded, as a result of granting or denying an injunction, can scarcely be subjected to any such scrutiny? How can it be proved that another’s view of the equities, or of the policy implications, is more correct than mine? It cannot be.
Even if reasons were relevant to such a departure from clear Supreme Court precedent (which, of course, they are not), *871 these reasons of ease and of defeat of accountability should be discomforting to those who believe that the judiciary, before all others, should be both intellectually rigorous and fully accountable to the public we serve. For at the end of the day, other than conscience, it is only analytical rigor, and the accountability that such renders possible, that can restrain a judiciary that serves for life and at the pleasure of no one. Of course, that the intellectual scrupulousness of conventional jurisprudence (ie., the painstaking determination of law from precedent and the meticulous application of that law to the particular facts of the litigation), and the resulting accountability, does serve as a bridle upon the courts is, together with the fact that it demands more of the intellect, precisely why this scrupulousness has been eschewed in many quarters in favor of the intellectually lazier and jurisprudentially misbegotten enterprise of decision by personal policy preference.
The saving grace that I find for our bald departure from the standard repeatedly articulated by the Supreme Court is that our fealty to Blackwelder and Rum Creek Coal has been, at least in recent years, more rhetorical than real, as we have hewed closer and closer to the Supreme Court standard. And even that rhetorical allegiance has noticeably been on the wane. In actual practice, even though not in formal doctrine, we have virtually without exception insisted upon a showing by the plaintiff of the likelihood of success on the merits of his claim before we have either entered an injunction in the trial court or affirmed the trial court’s entry of an injunction on appeal — and we have required this showing not merely at the threshold but also regardless of whether the balance of harms decidedly favored the plaintiff. Relatedly, we have all but abandoned the instruction that the balancing of harms is the preeminent of the injunction inquiries. And for their part, and to their credit, litigants have not dared to argue their causes even principally, much less alone, on the strength of the equities at stake, whatever they were.
We have returned to the proper standard out of wise recognition that we departed from that standard in Blackwelder and Rum Creek Coal at our peril, and that the Supreme Court was not likely to long tolerate our defiance. That we have done so is good. However, for the integrity of the law and for the public respect that follows only integrity, I believe that we should also reestablish the doctrinal symmetry between our caselaw, on the one hand, and our practice and Supreme Court precedent, on the other, that was jettisoned with our decisions in Blackwelder and Rum Creek Coal. I do not believe that the instant case presents the appropriate opportunity for this realignment, but I would like to think that we would welcome such an opportunity should one present itself.

 See Blackwelder, 550 F.2d at 194(surmising that Sinclair Refining Co. v. Midland Oil Co., 55 F.2d 42 (4th Cir.1932), which we said announced the correct standard in the Fourth Circuit, "was doubtless derived from Ohio Oil Co. v. Conway, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972 (1929)”).