**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, an agency of the United States of America, Plaintiff–Appellee,**

v.

**PSL REALTY CO., a corporation, et al., Defendants–Appellees,**

Granite Investment Company, a limited partnership; James C. Green; Capitol Indemnity Corporation, a corporation; and Howard Steele Construction Co., Defendants–Appellants,

**The Hon. Charles E. Jones; The Hon. John M. Karnes; The Hon. George W. Kasserman, Jr.; and all other Justices of the Illinois Appellate Court For the Fifth District; The Hon. Victor J. Mosele, and all Judges of the Third Judicial Circuit of Illinois, Appellants.**

Nos. 79–2134, 79–2211, 79–2212 and 79–2302.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 25, 1980.

Decided Sept. 12, 1980.

As Amended Sept. 19, 1980. Rehearing and Rehearing En Banc Denied Dec. 23, 1980.

Rex Carr, E. St. Louis, Ill., A. L. Zimmer, Asst. Atty. Gen., Springfield, Ill., for defendants–appellants.

Robert W. Patterson, Chicago, Ill., for plaintiff–appellee.

Before SWYGERT, CUMMINGS and BAUER, Circuit Judges.

BAUER, Circuit Judge.

These consolidated appeals present for review a decade of litigation, whose odyssean journey through the various state and federal courts sitting in Illinois was ultimately destined on a collision course between the two court systems and which achieved that destiny in a rather dramatic interim finale

when, on October 2, 1979, the United States District Court for the Southern District of Illinois, invoked its injunctive powers to enjoin the Illinois state courts from further interference with its jurisdiction over certain property subject to a mortgage foreclosure action instituted in the district court nearly four years earlier. 482 F.Supp. 77. Our jurisdiction is founded on 28 U.S.C. § 1292(a)(1), permitting an interlocutory appeal as a matter of right from the granting of an injunction. The sole issue before us is whether the district court erred in issuing the injunction. We affirm.

## I

Although the final chapter of this case remains to be written, its history to date stands as a compelling testimonial to the maximum utilization of the American jurisprudential system, embracing as it does both the state and federal trial and appellate courts as well as the federal bankruptcy courts. For our purposes, the story begins in the early 1960's when appellant James C. Green entered into a debtor–creditor relationship with the Piasa Federal Savings and Loan Association ("Piasa"), in which first lien mortgages were executed in favor of Piasa to finance the development and construction by Green and his associates of several apartment complexes situated in Madison, Clinton, St. Clair, and Sangamon Counties, Illinois. Financial difficulties were encountered in the completion and operation of the units and restructuring of the debt and provision of additional construction funds became necessary. To that end, the parties entered into a lengthy and detailed agreement, termed the Base Agreement, on August 1, 1970.

Under its terms, title to the properties was conveyed to a newly formed corporation, PSL Realty Company, wholly owned by Piasa. PSL Realty Company ("PSL") then entered into contracts for deed to the same properties with Granite Investment Company ("Granite"), a limited partnership of which James Green was the principal. Granite was to manage the properties until such time as the provided payments were made and the other conditions imposed by the contracts for deed were fulfilled, upon which PSL would reconvey the properties to Granite. During this time PSL had an absolute right to all income generated by the properties. Piasa continued to hold the first lien mortgages as mortgagee.

The Granite management arrangement was not successful. The properties continued to experience grave financial difficulties and in 1971, the Federal Savings and Loan Insurance Corporation ("FSLIC") determined that Piasa was on the verge of insolvency. Pursuant to its powers under Section 406(f) of the National Housing Act, 12 U.S.C. § 1729(f), FSLIC procured the merger of Piasa into the Illini Federal Savings and Loan Association ("Illini"). Under the terms of the merger, Illini became the owner of the mortgages, forty–eight in number, upon the apartment units and a residence of James Green. Illini also became the sole owner of PSL which, under the Base Agreement, was the holder of legal title to the properties, subject to the contracts for deed with Granite, and entitled to the gross rentals from the operation of the units. At the time of the merger, the Green loans were in the area of $14 million and were seriously delinquent. As the principal inducement to Illini, FSLIC and Illini entered into a Contribution Agreement, which provided that FSLIC would subsidize Illini for certain losses incurred in connection with the non–earning assets it would acquire from Piasa. The agreement also granted FSLIC the option to terminate that subsidy by purchasing the non–earning Piasa assets from Illini at book value.

After the merger, the economic situation pertaining to the financial management and operation of the properties continued to deteriorate. Granite remained manager of the properties, but the units were incurring losses of approximately $30,000 per month. Mortgage delinquencies continued to mount, and matters reached a climax in March 1972. On March 27, PSL and Illini demanded the books and records from Granite, but they were refused. On April

11, 1972, PSL and Illini filed a four count complaint in the Circuit Court of Madison County, Illinois seeking an injunction requiring Granite and James Green to turn over the books and records of Granite for examination, to refrain from collecting further rents, and to cease interference with PSL's collection of the rents. A temporary restraining order was issued to that effect upon posting of a $50,000 bond, security waived. On April 28, 1972, the trial court denied Granite's motion to dissolve the temporary injunction and granted the motion of PSL and Illini to appoint FSLIC, without objection by Granite, as receiver of the properties *pendente lite.* Pursuant to the powers accorded to it by the receivership order, FSLIC designated Illini as its local agent in the management of the receivership properties.

On May 23, 1972, Granite and Green commenced an interlocutory appeal challenging the issuance of the injunction and the appointment of the receiver. The matter was continued at the request of the parties and was finally argued to the Illinois Appellate Court for the Fifth District on March 31, 1976. On July 23, 1976, the appellate court reversed the order appealed from and dissolved the temporary injunction and receivership on the ground that these ancillary remedies were inappropriate in the absence of a complaint stating an underlying cause of action. The case was remanded to the circuit court solely for an accounting of the income and expenses of the receivership, for a determination of the distribution of the net income, and for the award of a fee to the receiver. *PSL Realty Co. v. Granite Investment Co.,* 42 Ill.App.3d 697, 1 Ill.Dec. 417, 356 N.E.2d 605 (1976).

On August 13, 1976, PSL and Illini filed a petition for rehearing with the appellate court. On August 18, 1976, FSLIC exercised its contractual right under the Contribution Agreement to purchase the mortgages from Illini at the agreed price of $10,673,000, in order to reduce its obligation to indemnify Illini for losses on Piasa's non-earning assets. On August 26, 1976, FSLIC filed a suit in federal court to foreclose on the notes and mortgages encumbering the

properties, and the subsequent actions of the federal and state courts precipitated the injunction order which is the subject matter of the instant appeal.

On August 31, 1976, Granite and Green also petitioned the Illinois Appellate Court for rehearing of its decision dissolving the temporary injunction and receivership, asserting, among other claims, that FSLIC had acquired the mortgages and was prosecuting a foreclosure action in federal court, and that Granite was entitled to possession of the properties. On the same day, FSLIC petitioned the district court for an order authorizing it to remain in possession of the subject real estate as mortgagee. Granite opposed the petition on the grounds that FSLIC was estopped, by its conduct, from proceeding with foreclosure and that FSLIC had no legal right to purchase the mortgages in light of the state court's jurisdiction. On September 2, 1976, the district court entered an order authorizing FSLIC to remain in possession of the properties as mortgagee, but providing specifically:

> That this order shall become operative upon the effective date of the mandate from the Illinois Appellate Court for the Fifth District dissolving FSLIC's status as receiver of the subject properties.

Order of September 2, 1976 at 2–3. On September 13, 1976, the Illinois Appellate Court denied the petitions for rehearing in a supplemental opinion and the mandate issued on October 13, 1976. Having decided that it had the power to and would in fact assume jurisdiction over the properties of the then–dissolved receivership, the district court proceeded with the foreclosure action.

The focus of the litigation returned to the Circuit Court of Madison County, Illinois. On April 28, 1977, the circuit court denied the petitions of Granite and Green challenging the conduct of FSLIC as receiver and entered an order approving the receiver's final report and discharging the receiver effective retroactively to September 30, 1976. While the appeal by Granite and Green from this order was pending before the Illinois Appellate Court, the trial on the

merits of the foreclosure case in federal court commenced. On November 16, 1978, FSLIC rested its case and Granite's motion for a directed verdict was denied. The trial was subsequently recessed and in the spring of 1979, the district court advised the parties that the trial would resume on September 24, 1979. On September 13, 1979, the Illinois Appellate Court entered its now controversial judgment from the appeal of the circuit court order discharging the receiver. The appellate court held that FSLIC breached its fiduciary duty as a receiver by acquiring the notes and mortgages to the property and directed the circuit court to order FSLIC to credit its receiver's fee to the mortgages and to convey the notes and mortgages back to Illini. In all other respects the order appealed from was affirmed. *PSL Realty Co. v. Granite Investment Co.*, No. 77–125 (September 13, 1979).

On September 26, 1979, the district court entered an order confirming its jurisdiction over the parties and the possession of the properties and noted that it was compelled to do whatever was necessary to protect that jurisdiction. On the same day, the Honorable Charles E. Jones, Justice of the Illinois Appellate Court for the Fifth District, entered an order staying the September 13, 1979 decision of the appellate court. The Order for Stay enjoined FSLIC and PSL from proceeding with the foreclosure case in federal court and also restrained Illini, which was not a party to that action and against whom no relief had been awarded in the September 13, 1979 opinion. The Order for Stay further declared that any attempted future transfer of title to the properties by FSLIC, Illini, or the current legal title holder, PSL, would be void and directed that this cloud on the titles to the properties be recorded with the recorder of deeds in the respective counties in which the properties were situated.

On September 27, 1979, the district court was presented with the Order for Stay issued by Justice Jones of the Illinois Appellate Court. The district court admonished the parties to make every effort to avoid an unseemly conflict between the two court systems and, upon FSLIC's representation that it would seek a reconsideration of the Order for Stay by the three justices of the Illinois Appellate Court, the trial of the foreclosure action was again recessed to October 1, 1979.

On Friday, September 28, a special session of the Illinois Appellate Court was convened to entertain arguments on FSLIC's motion to reconsider and vacate the Order for Stay. Granite presented a petition to the court asking that FSLIC be held in contempt for purchasing the mortgages in 1976 and fined $10,000,000 and further that it be fined $1,000,000 per day if it continued to prosecute the foreclosure case in federal court. On October 1, the appellate court issued an order by telephone to the parties which sustained the injunction against FSLIC, PSL and Illini from proceeding in federal court, but only until the issuance of the mandate, which was directed to issue *instanter.* Later that day the parties were advised that the court had decided to revise its order and that the telephone order was inoperative.

After being advised on October 1 of the appellate court's refusal to withdraw its Order for Stay, the district court reluctantly decided that an injunction pursuant to 28 U.S.C. § 2283 was necessary in aid of its jurisdiction. The district court found that the actions of the Illinois Appellate Court interfered with the property in its possession by threatening the parties with contempt and by placing a cloud upon the titles to the properties. The court drew upon the authority of 28 U.S.C. § 2283 and carefully tailored an injunction to prevent any further interference with its exclusive possession. The injunction restrained, among others, all Justices of the Illinois Appellate Court for the Fifth District and all Judges of the Illinois Circuit Courts receiving actual notice of the injunction,

. . . from taking any action, without prior written permission of this court, which in any way, directly or indirectly, impinges upon, limits or otherwise interferes with the jurisdiction of this court in this cause

.    .    .    .    .

Memorandum Order and Injunction of October 2, 1979 at 12–13.

On October 3, 1979 the Illinois Appellate Court entered an order in the form of a "Supplemental Opinion," sustaining the injunction against FSLIC, PSL and Illini, to be operative *after* the issuance of the mandate which again was directed to issue *instanter*. Furthermore, the appellate court declined to remove its absolute restraint on the alienability of the properties.

On October 3, 1979, the parties to the foreclosure action appeared before the district court pursuant to its order for the resumption of the trial. At that time, Granite filed a notice of appeal from the injunction order of the district court to this Court. It also filed a motion requesting a stay of the enforcement of that order and a postponement of the foreclosure proceedings pending Granite's appeal. The district court denied the motion for stay, but allowed Granite until October 5 to obtain a postponement of the proceeding directly from this Court, and ordered the trial to resume on October 9. On October 5, 1979, we denied Granite's application for a stay of the proceedings.

On October 9, 1979, Granite filed a debtor's petition to reorganize under Chapter 11 of the Bankruptcy Act in the United States Bankruptcy Court for the Southern District of Illinois. Later that day, Granite advised the district court of the petition and asserted that under Section 362(a) of the Act, the foreclosure proceedings were automatically stayed. The district court recessed the trial to determine whether or not it had jurisdiction to proceed with the foreclosure action under the Bankruptcy Act.

On October 11, 1979, the district court convened a scheduled hearing to show cause why the temporary injunction entered on October 2 should not be made permanent. The Attorney General for the State of Illinois appeared in behalf of the Justices of the Illinois Appellate Court for the Fifth District and the Judges of the Third Judicial Circuit of Illinois, and filed a motion to vacate the order and injunction of the district court. The district court denied the motion to vacate and, after hearing argument from the Attorney General and from counsel for Granite, made the injunction permanent by order entered October 11, 1979. The Attorney General, on behalf of the foregoing named judges, and counsel for Granite filed notices of appeal from that order to this Court. These appeals have been consolidated for decision by this Court.

II

■ The sole issue for review in these interlocutory appeals is whether the district court erred in entering the permanent injunction order. Appellate review of an injunction order is limited to the determination of whether the district court abused its discretion in deciding that the circumstances of the case justified injunctive relief. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–932, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1975); *Kolz v. Bd. of Ed. of the City of Chicago*, 576 F.2d 747, 748 (7th Cir. 1978). We conclude that the circumstances in this case fully warranted injunctive relief and that the injunction entered by the district court constituted the sound exercise of its judicial discretion.

As a preliminary matter, we address the appellant's argument that the district court lacked subject matter jurisdiction in this case since such a finding would be dispositive of the remaining claims of error asserted on appeal. The appellants argue that the Illinois Circuit Court for Madison County acquired jurisdiction over the properties by its appointment of a receiver on April 28, 1972, and that, under the common law of receivers, the properties have remained in the exclusive possession of the state court because the receiver has not been discharged and the receivership property has not been returned to the original owner or to another party pursuant to court order. Accordingly, the appellants contend that the district court was incapable of obtaining exclusive jurisdiction over the properties in the foreclosure action and was therefore without power to enter an injunction in aid of jurisdiction it never acquired. The appellees, also in reliance on the law of receiv-

ers as well as the opinions of the Illinois Appellate Court in this case, contend that the state court's control over the properties was surrendered no later than October 13, 1976, the date the mandate of the Illinois Appellate Court dissolving the receivership was filed in the circuit court. With the dissolution of the receivership on October 13, the appellees argue that the district court properly acquired jurisdiction over the *res* by its order effective on that date, and that what remained in the state court was an exclusively *in personam* proceeding based on that court's residual jurisdiction over its receiver to require an accounting.

As a general rule, when a court of competent jurisdiction has, by appropriate proceedings, taken property into its possession in receivership and appointed a receiver, the property is *in custodia legis* and is thereby withdrawn from the jurisdiction of all other courts. The receiver is an officer of the court and subject to its orders in relation to the property for which he is responsible until discharged by the court. Moreover, unless the receiver has made a disposition of the property by order of the court to the original owner or to another party, upon the receiver's discharge the property remains in the custody of the court. When the receiver in obedience to a court order has so disposed of the property in receivership, his liability and responsibility as receiver to that property ceases. Since the property is no longer *in custodia legis*, the receivership is terminated. However, an *in personam* action against the receiver concerning a breach of his fiduciary duties to the receivership property may nevertheless be maintained subsequent to his discharge. *See* Clark, *LAW OF RECEIVERS*, § 692.1 (3d ed. 1959); *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 164 F.Supp. 655 (S.D.N.Y.1958), *aff'd*, 277 F.2d 462 (2d Cir. 1960) (*per curiam*).

In the instant case, although the Illinois Appellate Court dissolved the receivership by its mandate of October 13, 1976, the receiver was not discharged because the appellate court, in its opinion of September 13, 1979, reversed and remanded the April 1977 order of the circuit court discharging the receiver. However, no further action was taken by the circuit court because the appellate court subsequently stayed its decision rendered on September 13. Thus, under an application of the foregoing principles to the circumstances in this case, the receivership property would be deemed to remain in the custody of the circuit court until such time as the receiver is discharged and the receivership necessarily terminated by a court order directing a disposition of the property.

However, we find the appellants' reliance on these principles to be misplaced in the context of this case for the reason that the state court failed to acquire possession of the properties in the first instance. On October 13, 1976, the Illinois Appellate Court issued its mandate dissolving the state trial court's injunction and appointment of the receiver on the ground that no pending dispute existed as to the control or ownership of the properties or the mortgages encumbering them. *PSL Realty Co. v. Granite Investment Co.*, 42 Ill.App.3d 697, 1 Ill.Dec. 417, 356 N.E.2d 605 (1976). Since no complaint relating to the merits of the case had been filed in the trial court before or after it ordered injunctive relief and a receivership, the appellate court held that these orders were improvidently granted under the established rule that such ancillary remedies are inappropriate in the absence of a substantive cause of action. 1 Ill.Dec. at 419, 356 N.E.2d at 607–609. It is equally settled that where, as here, the court lacks jurisdiction to adjudicate the principal matter, its orders purporting to grant the ancillary relief of temporary receivership are likewise beyond its jurisdiction and as such are *void ab initio*. *Firebaugh v. McGovern*, 404 Ill. 143, 88 N.E.2d 473 (1949). Since the Circuit Court of Madison County was found to be without jurisdiction to award the ancillary remedy of receivership, its order placing the properties in receivership and appointing FSLIC as receiver was void. Since the state court was not a court of competent jurisdiction exercising control over the properties which

would preclude the institution of an action concerning the properties in federal court, the district court was free to assert its exclusive jurisdiction over the properties in the foreclosure suit, and appropriately did so by its order effective October 13, 1976.

This result is consistent with *Doyne v. Saettele*, 112 F.2d 155 (8th Cir. 1940), a remarkably analogous case. In that case, the St. Louis City Circuit Court entered a decree finding a partnership had been dissolved and appointed a receiver for the assets. The Missouri Supreme Court ordered the receivership dissolved on the ground that the petition upon which the receiver had been appointed failed to state a cause of action and thus the circuit court was without jurisdiction to appoint a receiver. Before the mandate of the supreme court was filed, an action was commenced in the federal court seeking an accounting, a liquidation of the assets, and a distribution of the net income. Shortly thereafter, the district court issued an injunction restraining the parties from interfering with its jurisdiction over the assets which had previously been in the possession of the state court.

The Court of Appeals for the Eighth Circuit affirmed the district court's exercise of its injunctive powers in aid of its jurisdiction, and specifically rejected the applicability of the principle that because the state courts had first acquired jurisdiction of the property involved they were entitled to retain it exclusively against all other courts. *Doyne, supra* at 160. The court of appeals reasoned that because the Missouri Supreme Court had ruled that the receivership must be dissolved, the state court was not a court of competent jurisdiction enabling it to exercise exclusive control over the property which barred an action in federal court concerning the same property. This conclusion was reached despite the fact that the federal court had acted before the mandate of the Missouri Supreme Court had been issued and that "certain acts remained to be done by the Missouri courts to make the writ [dissolving the receivership] completely effective." *Doyne, supra* at 161.

Having determined that the district court properly acquired subject matter jurisdiction over the properties involved in this case, it remains to be determined whether the district court properly invoked its injunctive powers to prevent interference with its exclusive possession by the state courts of Illinois.

### III

■ That the district court has the power to enjoin a party to an action before it in aid of its jurisdiction cannot be disputed. 28 U.S.C. § 1651; *Ex Parte Baldwin*, 291 U.S. 610, 54 S.Ct. 551, 78 L.Ed. 1020 (1934). It is also clear that the district court has the power to enjoin the state courts of Illinois pursuant to Title 28, United States Code, Section 2283, which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction . . . . .

28 U.S.C. § 2283. *See* 14 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3631, at 16 (1976); *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941).

The mere power to take such action is not, of course, sufficient to sustain the entry of the injunction. The circumstances precipitating the injunction must also be appropriate for injunctive relief. In this case the district court found itself compelled to invoke its injunctive powers to protect its jurisdiction under the established principle that "when a court of competent jurisdiction has obtained possession, custody, or control of property, that possession may not be disturbed by any other court." 14 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 3631, at 6 (1976). *See e. g., Palmer v. Texas*, 212 U.S. 118, 129–130, 29 S.Ct. 230, 233, 53 L.Ed. 435 (1909).

The Illinois Appellate Court, in its Order for Stay of September 26, 1979, effectively enjoins FSLIC and PSL Realty Company, parties to the foreclosure action, from proceeding with that action in federal court. Further, FSLIC is restrained by that order from transferring the properties, which are

subject to the jurisdiction of the district court, although the appellate court's order of September 13, 1979 directed FSLIC to reconvey the properties to its predecessor. Finally, the appellate court decreed that all further attempts to convey title to the properties would be void and ordered that this cloud on the titles be recorded in each of the Illinois counties in which the properties are located. It requires no citation of authority to support the district court's conclusion that these acts interfered with its exclusive possession and control of the same properties and mortgages. We therefore hold that the district court, in the sound exercise of its discretion, properly invoked its injunctive powers to protect its jurisdiction from further interference by the Illinois state courts.

## IV

We have carefully considered the other arguments advanced by the appellants and in view of the record find them to be equally without merit. For the foregoing reasons, the judgment appealed from is affirmed and the Clerk of this Court is directed to enter judgment accordingly.

AFFIRMED.