GLOBE GLASS & MIRROR CO.

v.

James H. "Jim" BROWN, et al.

Civ. A. No. 94–4033.

United States District Court,
E.D. Louisiana.

June 19, 1995.

George C. Freeman, III, David L. Stone, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, Joel G. Chefitz, Robert K. Niewijk, Katten, Muchin & Zavis, Chicago, IL, for plaintiff Globe Glass & Mirror Co.

David Charles Kimmel, La. Dept. of Justice, Baton Rouge, LA, Stephen Whitlow, La. Dept. of Justice, Atty. Gen. Office, Baton Rouge, LA, for defendant James H. Brown, M.D., in His Official Capacity as Com'r of Ins. for State of La., aka Jim Brown.

## ORDER AND REASONS

JONES, District Judge.

Pending before the Court is a motion to dismiss filed by defendant, James H. "Jim" Brown, who has been sued in his official capacity as Louisiana's Insurance Commissioner. Having reviewed the memoranda of the parties, the record and the applicable law, the Court DENIES the motion.

### Background

Plaintiff, Globe Glass & Mirror Company (hereinafter "Globe"), is an Illinois corporation, whose wholly-owned subsidiary, USA–GLAS, Inc., provides automobile glass repair and replacement services throughout the United States.[1] (Complaint, paragraphs 3 and 5, R.Doc. 1.) Globe or USA–GLAS enter into contractual agreements with insurance companies to offer their policyholders auto glass services at competitive prices in a "network," and USA–GLAS enters into agreements with local glass shops to provide such services at negotiated prices. *Id.*, paragraph 6. These shops then become part of the "network." *Id.* When a policyholder, including a policyholder in Louisiana, needs to repair his auto glass, he calls an "800" number. *Id.*, paragraph 7. USA–GLAS has an affiliated local shop provide the services at the policyholder's home, place of work, or other location. *Id.* "The policyholder's insurance company then pays USA–GLAS for the work pursuant to the terms of Globe's or USA–GLAS's agreement with the insurer." *Id.*

In 1992 and 1993, the Louisiana legislature passed two statutes, which, on their face, allegedly affect Globe's right to conduct business in the aforementioned fashion. The first, LSA–R.S. 22:1214.1, is entitled "Automobile insurance; unfair trade practice" and provides:

> It shall be an unfair method of competition and unfair or deceptive act or practice for any insurer to establish a contract or agreement with any company to manage, handle, or arrange insurance repair work or to act as an agent for the insurer in any manner, where the company establishes a price which must be satisfied by a repair shop as a condition of doing claims repair work for the insurer, and then retains a percentage of the claim paid by the insurer.

The second statute, LSA–R.S. 22:1214.2, also is entitled "Automobile insurance; unfair trade practice" and provides:

> It shall be an unfair method of competition and unfair or deceptive act or practice for any insurer to establish a contract or agreement with any individual or company to manage, handle, subcontract, broker or arrange insurance repair work for any glass repair or replacement on a motor vehicle.

---

1. The background facts are taken from plaintiff's complaint, with the exception of the statutory references.

In 1993, defendant brought an administrative action against Allstate Insurance Company, one of USA–GLAS's major customers, contending that its relationship with USA–GLAS violated the above-cited statutes, because it constituted an impermissible arrangement for the handling of glass repair or replacement services. (R.Doc. 1, Paragraph 20.)

Globe has filed this suit for injunctive and declaratory relief, alleging that the above-cited statutes unconstitutionally burden interstate commerce and impair contracts in violation of U.S. Const. art. I §§ 8, 10, by protecting independent, in-state auto glass shops from competition posed by automobile glass repair networks. (R.Doc. 1, Paragraphs 24–27.)

Globe also alleges that some, but not all insurers have terminated their contractual relationships in "auto glass networks" in Louisiana, including cancellations with Globe and USA–GLAS. (R.Doc. 1, Paragraph 19.) Further, because the "vast majority of auto glass repair and replacement work in Louisiana is paid for or reimbursed by insurers ... [w]ithout a contractual relationship with an insurer, an auto glass network such as USA–GLAS will have virtually no business." *Id.*, Paragraph 21. Therefore, Globe faces the prospect of losing more business, including that with Allstate. *Id.*, Paragraph 22.

The defendant filed this motion to dismiss, contending that venue is improper and that the federal courts should abstain due to the pendency of administrative proceedings involving the same nucleus of facts against Allstate. Globe contends that venue is proper and that this court should not abstain because no proceedings are pending against the plaintiff.

## Law and Application

### I. Venue

 Brown contends that the Eastern District of Louisiana is an improper venue for this suit for declaratory and injunctive relief because he maintains his official residence in the Middle District of Louisiana, relying on 28 U.S.C. § 1391(b) and *Butter-*

*worth v. Hill,* 114 U.S. 128, 5 S.Ct. 796, 29 L.Ed. 119 (1885).

However, defendant relies on the pre–1990 version of § 1391(b), which provided that venue was proper only in the district where all the defendants resided or "in the judicial district ... where the claim arose." 28 U.S.C. § 1391(b) (before the 1990 amendments). *See Leroy v. Great Western United Corp.,* 443 U.S. 173, 184, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In 1990, Congress amended the venue statute, replacing the language "the judicial district ... in which the claim arose" with "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." Wright & Miller, *Federal Practice and Procedure:* Civil 2d § 3806 (1994 supp.). Therefore, under the current version of the venue statute, an action may be brought in the district "where any defendant resides, if all defendants reside in the same state," 28 U.S.C. § 1391(b)(1), or in any district "in which a substantial part of the events ... giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). According to the affidavit of Mary Jo Prigge, a substantial part of USA–GLAS's existing Louisiana business occurs in the Eastern District.[2] Therefore, this suit is properly brought in this district. *See Farmland Dairies v. McGuire,* 771 F.Supp. 80 (S.D.N.Y.1991) (venue proper in district where milk distributions primarily occur in action seeking declaratory relief as to constitutionality of order issued by state commissioner for application of compensatory payments).

### II. Abstention

#### A. *Younger* Abstention

Defendant first contends that this Court should abstain from exercising jurisdiction in this matter pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger* the Supreme Court held that a federal court should abstain from en-

---

**2.** This affidavit is attached as Exh. 1 to plaintiff's opposition memorandum, R.Doc. 5.

joining pending state court proceedings, absent bad faith, harassment or other extraordinary circumstances, because of the principles of comity and federalism,[3] and because a federal plaintiff can raise his constitutional objections in the state court proceeding. *Id.* at 41–45, 91 S.Ct. at 749–51. In the companion case of *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Court extended the abstention doctrine enunciated in *Younger* to include suits for declaratory judgment.[4]

*Younger* teaches that "[t]he accused [or federal plaintiff] should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Younger,* 401 U.S. at 45, 91 S.Ct. at 751. "Minimal respect for the state process, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 430, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982).

■ In *Middlesex County,* the Supreme Court extended the *Younger* abstention doctrine to include state administrative proceedings which are judicial in nature. *Id.* at 432–34, 102 S.Ct. at 2521–22 (holding that federal court should abstain from enjoining disciplin-

ary proceedings of the state bar ethics committee). "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved," as long as " 'the state proceedings afford an adequate opportunity to raise the constitutional claims.' " *Id.* at 432, 102 S.Ct. at 2521 (citations omitted). "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.' " *Id.* at 432, 102 S.Ct. at 2521. In summary, a federal court should abstain when:

1. There are ongoing state proceedings, judicial in nature;

2. The state proceedings involve important state interests; and

3. The state proceedings afford the federal plaintiff an adequate opportunity to raise the constitutional issues.

*Id.* at 432, 102 S.Ct. at 2521.[5] In *Middlesex County,* the federal plaintiff had adequate opportunity to raise his constitutional claims, because the administrative proceedings were subject to review by the state supreme court. *Id.* at 435–37, 102 S.Ct. at 2523–24. The Supreme Court construed this statement in *Middlesex* to mean that "it is sufficient ... that constitutional claims may be raised in state-court judicial review of the administra-

3. The notion of comity refers to "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Id.* at 44, 91 S.Ct. at 750. The American version of federalism requires "a system in which there is sensitivity to the legitimate interests of both State and National governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States." *Id.* at 750, 91 S.Ct. at 750–51.

4. *See also Steffel v. Thompson,* 415 U.S. 452, 454, 94 S.Ct. 1209, 1213, 39 L.Ed.2d 505 (1974) ("When a state criminal proceeding under a disputed state criminal statute is pending against a federal plaintiff at the time his federal complaint

is filed, *Younger v. Harris* and *Samuels v. Mackell* held, respectively, that, unless bad-faith enforcement or other special circumstances are demonstrated, principles of equity, comity, and federalism preclude issuance of a federal injunction restraining enforcement of the criminal statute and, in all but unusual circumstances, a declaratory judgment upon the constitutionality of the statute.") (citations omitted); *Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 3, 10, 107 S.Ct. 1519, 1522, 1525, 95 L.Ed.2d 1 (1987) (court should have abstained under *Younger* in action to enjoin plaintiff who obtained judgment in state court from execution of judgment pending appeal).

5. *See also Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 628, 106 S.Ct. 2718, 2723, 91 L.Ed.2d 512 (1986) (holding that a federal court should abstain from enjoining state administrative proceedings involving employment discrimination "so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim").

tive proceeding." *Ohio Civil Rights Commission,* 477 U.S. at 629, 106 S.Ct. at 2724.

■ Applying these principles to the present case, the Court finds that the pending state administrative proceedings are judicial in nature, having been brought against an insurance company for alleged violation of the two Louisiana statutes alleged by the federal plaintiff to be unconstitutional. Moreover, the statutory scheme proving for these proceedings allow for the giving of evidence and provide for appeal to the district and appellate court. LSA–R.S. 22:1360–67.

■ The state proceedings also involve an important state interest: regulation of the insurance industry, which falls within the exclusive jurisdiction of the states. 15 U.S.C. § 1011 *et seq.*

■ The third issue is whether the pending administrative proceedings provide an adequate opportunity for Globe to raise constitutional claims. The burden is on Globe "to show 'that state procedural law barred presentation of [its] claims.'" *Pennzoil,* 481 U.S. at 14, 107 S.Ct. at 1528, *quoting Moore v. Sims,* 442 U.S. 415, 432, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979). There is no doubt that Globe could intervene in the proceedings against Allstate. *See* Rules of Practice and Procedure Before the Commissioner of Insurance, § 1.9.[6] Further, while it is equally clear that the constitutionality of the statutes at issue can not be decided at the administrative level,[7] the statutes authorizing appeal of the administrative proceeding do not prohibit Allstate or Globe, if it intervened, from raising the constitutional issues at hand.[8] *See also Jackson v. Department of*

*Public Safety,* 562 F.Supp. 324, 326–27 (M.D.La.1983) (although an administrative agency, *i.e.,* the Civil Service Commission, could not declare a statute unconstitutional, constitutionality could be determined on appeal from the Civil Service Commission's ruling). Thus, under the dictates of *Middlesex* and *Ohio Civil Rights Commission* alone, the Court would have to abstain in this matter.[9]

■ However, this is not the end of the inquiry. The next question is whether, although Globe can but does not have to intervene in the state administrative proceedings, Globe's mere ability to intervene means this Court must abstain under *Younger.* The Supreme Court's decision in *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 928, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975), is instructive. In *Doran* the Supreme Court held that *Younger* barred relief to a corporation that was being criminally prosecuted for violation of an ordinance that prohibited topless dancing but not to two other corporations that were not being prosecuted. *Id.* at 928–29, 95 S.Ct. at 2566. *See also Steffel,* 415 U.S. at 455–56, 94 S.Ct. at 1213–14 (unarrested pamphleteer entitled to bring action in federal court; arrested pamphleteer may not).

At the same time, the Supreme Court in *Doran* recognized that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the *Younger* consideration." *Doran,* 422 U.S. at 928, 95 S.Ct. at 2566. Factors to be taken into consideration include common ownership, control or management. *See Hicks v. Miranda,* 422 U.S. 332, 348–49, 95 S.Ct. 2281, 2291–92, 45 L.Ed.2d 223 (1975) (*Younger* abstention appropriate

---

**6.** Attached as Exh. 1 to Globe's "Ex Parte Motion to File Exhibit to Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss." (R.Doc. 13.)

**7.** *See, e.g., Whittington v. Langston Drilling Co.,* 643 So.2d 336, 339 (La.App. 2nd Cir.1994) (only judicial branch, not quasi-judicial workers' compensation hearing officer, which functions within legislatively created Office of Workers' Compensation, can determine constitutionality of statute); *Red River Coors, Inc. v. McNamara,* 577 So.2d 187, 189–90 (La.App. 1st Cir.1991) (board of tax appeals does not have authority to decide constitutionality of a statute).

**8.** Globe states in its supplemental memorandum in opposition to the motion to dismiss that it has not intervened because "it knew the administrative law judge could not consider constitutional issues." (R.Doc. 10, p. 2.)

**9.** The Court also notes that Globe has made "no showing of bad faith, harassment or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex,* 457 U.S. at 435, 102 S.Ct. at 2523.

in action brought by theater owner involving allegedly obscene films where state criminal charges were pending against theater employees at the time of filing federal complaint).

The Fifth Circuit applied the principles set forth in *Jackson* and *Hicks* in *Women's Community Health Center of Beaumont, Inc. v. Texas Health Facilities Commission*, 685 F.2d 974 (5th Cir.1982). A medical center that had been denied a certificate of need brought a lawsuit along with two doctors and three pregnant women for declaratory and injunctive relief against the Texas Health Facilities Commission and other defendants to prevent enforcement of the certificate denial. *Id.* at 976–77. The plaintiffs also had filed a suit in state court to review the commission's denial of its certificate of need. *Id.* at 977.

The Fifth Circuit found that the interests of all the plaintiffs were so intertwined that *Younger* abstention applied to all.

> We recognize that the general rights of the plaintiff women and doctors in making the abortion decision are legally distinct from any rights the Center may assert; indeed, whatever constitutional claims the Center may have under *Roe v. Wade* must derive from the rights of women. But the present case involves only a single question: whether the Center can continue to operate consistently with the certificate of need requirements. The plaintiff women do not allege that the state might interfere with their ability to obtain an abortion anywhere but at the Center; the plaintiff doctors do not allege that the state might interfere with their ability to perform abortions anywhere but at the Center. The only relief requested is an order for the continued operation of the Center. All plaintiffs are represented by the same law firm, and are clearly able to see to it that the constitutional challenge is raised in state court.

*Id.* at 982.

Thus, under *Doran* and its progeny, abstention is called for only if Allstate and Globe are so intertwined through business ownership, control or management, or are so

otherwise "closely related," that *Younger* considerations apply.

Reviewing the facts in this matter on the record before it, the Court finds that the present case is different from *Hicks* and *Women's Community Center* and more akin to *Doran*. While Globe admittedly has a contract with Allstate that could be affected by the administrative proceedings, defendant has failed to show that Allstate and Globe are so "intertwined" through ownership, control or management that *Younger* should bar the present proceedings. Further, Globe's complaint is clear that not only did Globe have a contract with Allstate but also with other companies, contracts that could be affected by the statutes at issue. (Complaint, Paragraphs 19–21, R.Doc. 1.) Finally, although not a determinative factor, the Court notes that there is nothing in the record to show that Globe and Allstate are represented by the same law firms.

Thus, the Court finds that Globe and Allstate are legally distinct and separate, not only as entities but also in the extent of their interests, such that *Younger* abstention is inappropriate pursuant to the Supreme Court's teaching in *Doran*.

▌ Finally, the Court addresses one other issue raised by defendant. Brown contends that Globe has not "attempted to avail itself of the administrative or other state court [remedies] available to it, prior to bringing this declaratory action." (Defendant's memorandum in support, p. 4, R.Doc. 3.) However, a federal plaintiff does not have to exhaust state court or administrative remedies prior to bringing a suit for relief pursuant to 42 U.S.C. § 1983, as plaintiffs have done here. As the Supreme Court stated in *Steffel*, 415 U.S. at 472–73, 94 S.Ct. at 1222, "[w]hen federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."

Therefore, for the foregoing reasons, the Court finds that it will not abstain pursuant to *Younger, supra.*

## B. *Pullman* Abstention

[8] Defendant next contends that the Court should abstain pursuant to *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). There, the Supreme Court held that a federal court should abstain from deciding constitutional issues when a state court interpretation of its own laws may terminate the controversy.

> In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.

*Id.* at 500, 61 S.Ct. at 645.

However, *Pullman* abstention is not set in stone, as the Supreme Court recognized in *Harman v. Forssenius,* 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). There the Supreme Court was asked to overrule a district court's refusal to abstain from review of Virginia statutes involving a poll tax. *Id.* at 534, 85 S.Ct. at 1181. The Supreme Court held that the trial court "did not abuse its discretion in refusing to postpone the exercise of its jurisdiction" until Virginia courts had been given an opportunity to construe the underlying state law issues. *Id.* The Court reasoned as follows:

> Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal/state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. The doctrine, however, contemplates that deference to state court adjudication only be made where the issue of state law is uncertain. If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. Thus, "recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of law."

*Id.* at 534–35, 85 S.Ct. at 1182.

The Supreme Court then found that the poll tax statutes at issue were "clear and unambiguous in all material respects." *Id.* at 535, 85 S.Ct. at 1182.

In *Louisiana Debating and Literary Association v. City of New Orleans,* 42 F.3d 1483 (5th Cir.1995), the Fifth Circuit faced a similar issue involving a city ordinance prohibiting discrimination. The City argued on appeal that the district court erred in not abstaining pursuant to *Pullman.* Quoting *Harman, supra,* the Fifth Circuit found that the City had "failed to identify, and we fail to find, any ambiguity in the [ordinance] which would support, let alone demand, abstention." *Louisiana Debating and Literary Association,* 42 F.3d at 1492.

In the present case, Brown has not identified any ambiguity in the statutes at issue which, if they could be construed as to their constitutionality by state courts, would support or demand abstention. Indeed, as the courts did in *Harman* and *Louisiana Debating and Literary Association,* this Court finds that the statutes complained are not ambiguous but specifically provide that "[i]t shall be an unfair trade method of competition and an unfair or deceptive act" for insurers to contract or enter into agreements with entities such as Globe in regard to auto glass repair. LSA–R.S. 22:1214.1 and 22:1214.2. There is no ambiguity in the statutes which would prevent this Court from exercising jurisdiction.

Further, as instructed by the Fifth Circuit, the Court has considered the totality of the circumstances in this case in deciding whether to abstain, including "consideration of the rights at stake and the costs of delay pending state adjudication" of the state administrative proceeding and an appeal, if any, by

Allstate. *Louisiana Debating and Literary Association,* 42 F.3d at 1491, *quoting Duncan v. Poythress,* 657 F.2d 691, 697 (5th Cir.1981) Under the totality of the circumstances, the Court deems it proper to exercise jurisdiction in this matter and not abstain under *Pullman,* especially considering that Globe has not and is not required to intervene in the administrative proceeding and that it has not even been shown that Allstate has raised the constitutional issues present in this case.

### Conclusion

The record, facts and law in this case show that venue is proper in this district. Additionally, under the facts of this case, it would be improper for this Court to abstain from exercising jurisdiction pursuant to either *Younger, supra,* or *Pullman, supra,* as those cases have been construed by later decisions.

Accordingly,

IT IS ORDERED that defendant James H. "Jim" Brown's motion to dismiss is DENIED.